389 S.C. 1 (2010)
698 S.E.2d 612
C. Wayne HILL, Respondent,
v.
SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, Bureau of Ocean and Coastal Resource Management, Appellant, and
Marlon Weaver and South Carolina Coastal Conservation League, Intervenors,
Of whom South Carolina Coastal Conservation League is Appellant.
No. 26873.
Supreme Court of South Carolina.
Heard June 25, 2010.
Decided August 23, 2010.
*5 Amy E. Armstrong and James S. Chandler, Jr., both of Pawleys Island, for Appellant South Carolina Coastal Conservation League.
General Counsel Carlisle Roberts, Jr., of Columbia, and Staff Attorney Davis A. Whitfield-Cargile, of North Charleston, for Appellant South Carolina Department of Health and Environmental Control, Bureau of Ocean and Coastal Resource Management.
Kenneth R. Moss, of The McGougan Law Firm, of Little River, for Respondent.
*6 Justice BEATTY:
C. Wayne Hill ("Hill") was issued a notice of violation by the South Carolina Department of Health and Environmental Control, Bureau of Ocean and Coastal Resource Management ("DHEC") for constructing a bulkhead that was not in compliance with a Critical Area Permit issued by the agency. DHEC and an intervenor, the South Carolina Coastal Conservation League ("League"), now appeal from a circuit court order that reversed an administrative law judge's ("ALJ") determination that Hill had violated the terms of the permit. We reverse.

I. FACTS
Hill owns Lot 1, Block S2, on 55th Avenue in the Heritage Shores Subdivision of Cherry Grove in North Myrtle Beach, South Carolina. Hill's lot is a narrow parcel that is bounded to the south and to the west by a manmade canal that runs through the residential subdivision. In July 2002, Hill filed a Permit Application with DHEC for the construction of a 110' bulkhead[1] for erosion control and 4' × 12' walkway (with handrails) leading to a 3' × 15' ramp and a 10' × 12' floating private residential dock.
On September 19, 2002, DHEC issued a Critical Area Permit to Hill for the construction of the bulkhead, walkway, ramp, and dock as requested by Hill (OCRM-02-668). The permit listed ten Special Conditions, including Special Condition 1, "that the proposed bulkhead is located within 1.5' from [the] escarpment."
Work on the bulkhead began on or about July 15, 2003. DHEC inspected the site in July 2003 and asked Hill to cease all work after finding the bulkhead was not being constructed in accordance with Special Condition 1 of the issued permit. Hill stopped for approximately one week and then resumed construction, completing the bulkhead by August 4, 2003. Hill admittedly also "proceeded to backfill the area behind the newly constructed bulkhead."
*7 DHEC sent Hill a Notice of Violation, which stated the bulkhead as constructed was not in compliance with the permit issued for the tidelands critical area and was in "potential violation of the South Carolina Coastal Zone Management Act [CZMA], S.C.Code Ann. §§ 48-39-10 et seq. (Supp.2000)." Hill denied the violation, but offered to restore an area to offset any loss of wetlands that might have occurred during the construction of the bulkhead. DHEC thereafter sent Hill an Admissions Letter, along with Proposed Findings of Fact. Hill responded by denying any violation and asserting the bulkhead was constructed in accordance with the permit and applicable law.
DHEC issued an Administrative Enforcement Order in 2003, finding Hill had constructed a bulkhead in the tidelands critical area too far channelward and out of compliance with the issued permit. DHEC ordered Hill (1) to pay an administrative fine of $1,000; (2) to submit a work plan to DHEC within 30 days of the date of the order for the removal and reinstallation of the bulkhead in accordance with Special Condition 1 of the issued permit; and (3) to complete re-installation of the bulkhead in accordance with the permit within 90 days from the date of the order. It was further provided that if Hill did not either appeal the order or comply with it "within 30 days of receipt hereof," DHEC would file an action in the circuit court to enforce the order.
Shortly thereafter, Hill filed a notice with DHEC seeking to challenge the Administrative Enforcement Order, and the matter was submitted for a hearing before an ALJ. The ALJ granted Marlon Weaver and the League permission to intervene.[2] The ALJ sustained the Administrative Enforcement Order, requiring Hill to relocate the bulkhead to comply with the terms of the permit and to pay an administrative fine of $1,000. The ALJ found that, "because the tidal marshland *8 between the high ground of [Hill's] lot and the adjoining canals is a critical area within the coastal zone of the state, [Hill] was required to obtainand did obtaina permit from OCRM [DHEC] before constructing a bulkhead in that marshland." The ALJ stated Hill's permit allowed him to construct a bulkhead 110' in length that would be within 1.5' of the escarpment on Hill's property. However, the bulkhead Hill constructed was actually 145' in length and was erected at distances ranging from 6.5' to 31' from the existing escarpment, which was "significantly out of compliance with the permit he was issued by [DHEC]" and in violation of the CZMA.
The ALJ further found that Hill's actions had "resulted in the improper filling of over 1000 square feet of marshland" and that "[t]his filling is considered a major violation of the" CZMA. The ALJ found Hill had "used the bulkhead and the accompanying backfill to significantly increase the size of his residential lot, far exceeding the amount necessary for erosion control." The ALJ concluded DHEC's decision to assess a $1,000 fine and to require Hill to reconstruct the bulkhead so as to be in compliance with his issued permit and the CZMA "is an appropriate remedy for those violations."
Hill filed a petition for review of the ALJ's order with the South Carolina Coastal Zone Management Appellate Panel ("Appellate Panel"). The Appellate Panel issued a written Final Administrative Order affirming the order of the ALJ and adopting the Findings of Facts and Conclusions of Law contained therein.
Hill next sought review from the circuit court. The circuit court reversed the order of the ALJ and simultaneously quashed DHEC's Administrative Enforcement Order. As an initial matter, the circuit court ruled the ALJ lacked subject matter jurisdiction to hear Hill's appeal of DHEC's Administrative Enforcement Order.
The circuit court further ruled the ALJ erred in (1) failing or refusing to address the issue of the impact of a quit-claim deed executed in favor of Hill's predecessor-in-title, which granted certain rights to dredge and deposit spoil material above an agreed high water mark; (2) using an incorrect Critical Area Line and in finding Hill had constructed the *9 bulkhead too far into the critical area; and (3) failing or refusing to address Hill's argument that DHEC's Administrative Enforcement Order violated Hill's equal protection rights based on the allegation DHEC took no steps to remove the docks of neighboring property owners who would likewise be in violation if Hill's bulkhead was deemed in violation.
DHEC and the League now appeal from the circuit court's order. "DHEC" will be used hereinafter to refer to both the agency individually and collectively to the agency and its co-appellant, the League, where appropriate.

II. STANDARD OF REVIEW
This case involved multiple levels of review. Under the APA, the ALJ presides as the fact-finder in contested cases. Brown v. S.C. Dep't of Health & Envtl. Control, 348 S.C. 507, 560 S.E.2d 410 (2002). The proceeding before the ALJ was a de novo hearing, which included the presentation of evidence and testimony. Id.
Under the review procedure then in effect,[3] the Appellate Panel could not make its own findings of fact and was authorized to reverse the ALJ only if the ALJ's findings were not supported by substantial evidence or were controlled by an error of law. Dorman v. S.C. Dep't of Health & Envtl. Control, 350 S.C. 159, 565 S.E.2d 119 (Ct.App.2002).
The circuit court's review, as well as this Court's, is limited to determining whether the findings were supported by substantial evidence or were controlled by an error of law. Responsible Econ. Dev. v. S.C. Dep't of Health & Envtl. Control, 371 S.C. 547, 641 S.E.2d 425 (2007); Jones v. S.C. Dep't of Health & Envtl. Control, 384 S.C. 295, 682 S.E.2d 282 (Ct.App.2009).
In determining whether the ALJ's decision was supported by substantial evidence, this Court need only find, looking at the entire record on appeal, evidence from which *10 reasonable minds could reach the same conclusion that the ALJ reached. Jones, 384 S.C. at 304, 682 S.E.2d at 287. "The mere possibility of drawing two inconsistent conclusions from the evidence does not prevent a finding from being supported by substantial evidence." Id. (quoting DuRant v. S.C. Dep't of Health & Envtl. Control, 361 S.C. 416, 420, 604 S.E.2d 704, 707 (Ct.App.2004)).

III. LAW/ANALYSIS
On appeal, DHEC raises four issues concerning the circuit court's decision. In addition, Hill raises two points that warrant separate consideration.

A. Findings of the ALJ
DHEC first contends the circuit court erred in improperly making new findings of fact and in overturning the ALJ's findings of fact in violation of the applicable standard of review.
Specifically, DHEC contends the circuit court erred in "overturn[ing] the ALJ's findings that the area between Hill's property and adjoining canals is tidal marsh; that OCRM accurately measured the alleged violations; that Hill improperly filled in excess of 1,000 square feet of critical area marsh; that Hill erected his bulkhead too far channelward of the escarpment; and that Hill's actions resulted in a permanent loss of productivity from the estuary." DHEC asserts each of the ALJ's findings was fully supported by substantial evidence and these findings support the ALJ's conclusion that Hill violated the CZMA and the terms of his permit.
The circuit court found "[t]he ALJ's conclusions and findings were in error because, as a prerequisite to any of the findings or conclusions, the record must reflect that [DHEC] proved the existence and location of a lawfully established Critical Area Line. [DHEC] did not. Without first establishing a valid Critical Area Line, [DHEC] cannot demonstrate that it had any regulatory jurisdiction over [Hill's] property."
The circuit court, citing section 48-39-210 of the South Carolina Code, stated critical lines expire after three years and in this case DHEC had relied upon a critical line that was over three years old. The circuit court further stated that *11 even if DHEC has jurisdiction over Hill's property, DHEC's failure to establish a valid critical area is dispositive of whether it met its burden of proof in establishing Hill's alleged violations. The circuit court additionally found even with a valid critical line, DHEC's environmental manager could not interpret the drawings that were attached to the permit, and the permit provided the bulkhead was to be constructed in conformity with the drawings.
We hold the circuit court erred in overturning the findings of the ALJ and in determining any issues regarding the location of the critical line would preclude establishing a violation in this case.
The ALJ considered the import of the critical line as well as the alleged ambiguity of the drawings. As to the critical line, the ALJ found Hill's "concern with [DHEC's] current inability to pinpoint the location of the critical area line and escarpment as they existed on [Hill's] property prior to the completion of his bulkhead is misplaced." The ALJ stated Hill's violation is based on the measurements of the distance between the bulkhead and the escarpment, as set forth in the permit, and these measurements were documented by a DHEC employee during construction.[4]
As to the permit drawings, the ALJ found Hill's "permit was not ambiguous with regard to the size and location of his bulkhead." The ALJ observed, "While the drawings showing the bulkhead's location are not clean, precise documents, nothing in those drawings contradicts the clear, precise, and *12 specific language in the permit limiting the bulkhead to 110' in length and requiring the bulkhead to be no more than 1.5' from the existing escarpment."
DHEC notes Hill's own expert witness, Dr. Wayne Beam, testified that the critical area line did not expire until November 6, 2003 due to an extension agreement, and this date was after the date construction of the bulkhead was completed. DHEC asserts section 48-39-210(B) of the South Carolina Code provides that an expired critical area plat does not affect DHEC's critical area jurisdiction.[5]
In addition, DHEC asserts there is no indication that the location of the critical area line makes any difference that is favorable to Hill because the substantial evidence showed that, if the critical line has changed, the movement would be landward due to continuing erosion.
Steve Brooks, DHEC's Chief of Enforcement and Compliance, testified that when he observed the bulkhead Hill was constructing, it was obviously "significantly higher in elevation than the surrounding marsh area." Brooks stated the bulkhead was "significantly . . . channelward of the location indicated on the critical area line shown on the plat" and he "confirm[ed] that the bulkhead was constructed in excess of the 1.5' channelward of the, in this case, the critical line or the bluff line, assuming the two are the same."
Cindy Fitzgerald, an environmental manager with DHEC, testified she was the staff member who issued the Critical Area Permit to Hill. Fitzgerald conducted an inspection of Hill's bulkhead on July 24, 2003 during construction in response to an anonymous complaint and determined it was being built too far into the critical area. Fitzgerald documented the alleged violation with photographs showing that Spartina alterniflora, grass which is indicative of a critical area, had been cut down and destroyed landward of the bulkhead. She also took measurements every five feet to document that the *13 bulkhead had exceeded the length and location requirements specified in the permit.
We hold the ALJ's findings were supported by substantial evidence, and the fact that the circuit court might have disagreed with these findings does not prevent them from being supported by substantial evidence. The circuit court was not sitting as the fact-finder and under its limited scope of review, it erred in overturning the ALJ's findings that Hill's bulkhead did not comply with the terms of the permit that he had been issued.

B. Exclusion of Evidence
DHEC next argues the circuit court erred in ruling the ALJ should have admitted a quit-claim deed into evidence and should have heard arguments on whether DHEC has regulatory authority over Hill's property in light of the existence of the deed. DHEC states, "The quit-claim deed is related to a settlement between C.D. Nixon [Hill's predecessor-in-title] and the State of South Carolina in which Nixon quit-claimed lands that are or become below the mean high water mark to the State and the State quit-claimed all lands above the mean high water mark to Nixon."
The circuit court found the quit-claim deed granted certain rights and privileges to dredge and deposit spoil material above an agreed high water mark and noted Hill had asserted during the ALJ hearing that the quit-claim deed "may have usurped [DHEC's] regulatory authority." (Emphasis added.) The circuit court concluded the ALJ "erred by failing and refusing to address this issue."
DHEC asserts the ruling is flawed for two reasons. First, DHEC's authority over the critical area adjoining Hill's property is expressly granted by the CZMA, which requires a permit to utilize critical areas in the coastal zone.[6] DHEC asserts Hill did not dispute the ALJ's factual finding that the area filled in by Hill was tidal marshland containing Spartina alterniflora, the primary productivity plant in estuarine ecosystems, which is subject to the state's regulatory authority *14 under the CZMA. DHEC argues the deed is not relevant to its authority, which derives from statute, and a deed executed prior to passage of the CZMA cannot usurp the state's regulatory authority. Second, the deed itself recognizes DHEC's authority over the critical area, as it recites that a permit from the State must be obtained before any dredging occurs.
"The admission or exclusion of evidence is a matter within the sound discretion of the trial court and absent clear abuse, will not be disturbed on appeal." Gamble v. Int'l Paper Realty Corp. of S.C., 323 S.C. 367, 373, 474 S.E.2d 438, 441 (1996). Even a finding of an abuse of discretion does not end the analysis, however, "because to warrant reversal based on the admission or exclusion of evidence, the appealing party must show both the error of the ruling and prejudice." Fields v. J. Haynes Waters Builders, Inc., 376 S.C. 545, 557, 658 S.E.2d 80, 86 (2008). Prejudice is a reasonable probability that the fact-finder's determination was influenced by the challenged evidence or the lack thereof. Id.
At the hearing before the ALJ, Cindy Fitzgerald, DHEC's environmental manager, testified during cross-examination that the property seaward of Hill's bulkhead was public trust property as evidenced by the fact that it contained salt marsh vegetationSpartina alterniflora that grows only in critical areas with salt content.
In response, Hill's attorney sought to introduce the quit-claim deed to rebut the testimony that this was public trust property. However, in offering the deed, counsel acknowledged that he could not tell from the deed whether it was public trust property or not. The ALJ agreed to accept the deed as an "offer of proof," but declined to admit it into evidence, stating it was incumbent upon Hill's attorney to set forth evidence. The ALJ explained that he would be looking to "see if in fact the bulkhead is within 1.5 feet of the escarpment/critical area" as required by the permit.
We hold the circuit court erred in finding the ALJ abused his discretion in this regard. Hill's attorney expressly conceded at the hearing that he did not know whether the property was public trust property or not and that he could not tell from the proffered deed. Counsel stated he was, nevertheless, offering the deed "for what it's worth." Thus, *15 the deed did not establish the point in question and Hill's counsel conceded as much.
Moreover, Hill has not shown any resulting prejudice from exclusion of the deed, and both error and resulting prejudice must be shown by the party complaining of the exclusion of evidence. See, e.g., Fields, 376 S.C. at 557, 658 S.E.2d at 86 (stating both error and prejudice are necessary for reversal of a decision to exclude evidence). Therefore, the circuit court incorrectly found the ALJ committed error in this regard.

C. Subject Matter Jurisdiction
DHEC next contends the circuit court erred in finding the ALJ did not have subject matter jurisdiction to consider an appeal of agency enforcement proceedings, i.e., Hill's challenge of the Administrative Enforcement Order issued by DHEC.
Under the procedures then in effect,[7] South Carolina law provided no person could use a critical area without first obtaining a permit from DHEC. S.C.Code Ann. § 48-39-130(A) (Supp.2003).
Anyone having a permit denied or who was adversely affected by the granting of a permit could directly appeal a decision of the ALJ to the Appellate Panel. Id. § 48-39-150(D). Although it is not specified in this particular statute, the matter would first come before the ALJ as a contested case hearing. The APA defines a "contested case" as "a proceeding including, but not restricted to, ratemaking, price fixing, and licensing, in which the legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." Id. § 1-23-310(3) (emphasis added). The contested case hearing would allow the parties to dispute a permit denial and determine the rights of the parties.
Under section 1-23-600(B), the ALJ presides over all contested case hearings. See id. § 1-23-600(B) ("An administrative law judge . . . shall preside over all hearings of contested *16 cases as defined in Section 1-23-310 involving the departments of the executive branch of government in which a single hearing officer is authorized or permitted by law or regulation to hear and decide such cases . . . ."); Marlboro Park Hosp. v. S.C. Dep't of Health & Envtl. Control, 358 S.C. 573, 577, 595 S.E.2d 851, 853 (Ct.App.2004) ("The ALJ presides over all hearings of contested DHEC permitting cases.").
Section 48-39-180 provided that any applicant whose permit application had been finally denied, revoked, suspended, or approved subject to conditions of DHEC by the Appellate Panel, or any person adversely affected by the permit, could seek review in the circuit court. S.C.Code Ann. § 48-39-180 (Supp.2003).
The foregoing provisions concern a landowner's challenge to DHEC's decision to deny a permit in the first instance, as well as to challenges by others who might be adversely affected by the granting of a permit application, such as neighboring landowners.
Once a permit has already been issued and there has been an alleged violation of the permit, section 48-39-170(C) provided that upon the finding of a permit violation, DHEC could (1) issue an administrative order requiring compliance and impose a civil penalty of up to $1,000 per day of violation, (2) bring a civil enforcement action under this section, or (3) seek injunctive relief under section 48-39-160. Id. § 48-39-170(C).
Section 48-39-160, governing injunctive relief, allowed DHEC or any person adversely affected to obtain an injunction from the circuit court to restrain violations and to recover the cost of any restoration to the affected area. Id. § 48-39-160.
After reviewing all of the pertinent provisions, the circuit court concluded "the ALJ lacked the requisite subject matter jurisdiction to hear and decide [Hill's] appeal." The circuit court essentially found that section 48-39-170(C) provides DHEC may bring a civil enforcement action or seek injunctive relief in the circuit court; therefore, the action should have been heard in the circuit court.
We hold the circuit court erred in concluding this administrative enforcement matter should have been brought in the *17 circuit court and that the ALJ did not have jurisdiction to conduct a contested case hearing to review the propriety of the Administrative Enforcement Order.
The CZMA envisions two avenues for addressing violations. Under section 48-39-170(C), whenever DHEC determines there has been a violation of any permit, regulation, or statutory requirement, DHEC may bring a civil enforcement action and seek injunctive relief. S.C.Code Ann. § 48-39-170(C). The circuit court has jurisdiction to hear DHEC's civil enforcement action and has the authority to restrain any violations. Id. § 48-39-160. Matters under this avenue of review follow judicial procedures.
In addition, section 48-39-170(C) provides DHEC may issue Administrative Enforcement Orders requiring compliance with its issued permits and may additionally impose a civil fine upon the violator up to a maximum of $1,000 per day. Id. § 48-39-170(C). Matters brought under this procedure are administrative in nature and are, therefore, governed by the procedures of the APA.
Section 1-23-600(B) provided that persons aggrieved by an agency order were entitled to seek review of the agency's enforcement order by the ALJ by means of a contested case hearing. In addition, such review was provided by DHEC regulations.[8]
Moreover, review of the agency's enforcement order and its imposition of a civil fine is an administrative matter that falls squarely within the ambit of a contested case as defined in the APA. It is a proceeding in which the rights, duties, and privileges of a party are required to be determined by an agency after the opportunity for a hearing. S.C.Code Ann. § 1-23-310(3).
In the current case, Hill sought to challenge DHEC's Administrative Enforcement Order that imposed a civil fine and required relocation of the bulkhead before DHEC sought to enforce it by means of a civil suit in the circuit court. Thus, *18 this was an administrative proceeding in which Hill sought to have the parties' rights, duties, and privileges determined in a contested case hearing by the ALJ as provided by S.C.Code Ann. § 1-23-600(B). Accordingly, the ALJ had jurisdiction to hear this matter and the circuit court's ruling to the contrary is in error.

D. Equal Protection
DHEC next argues the circuit erred in ruling Hill's equal protection rights had been violated. DHEC asserts Hill failed to present any evidence of disparate treatment to justify this finding.
At the end of a lengthy hearing, Hill's attorney summarily brought up the issue of equal protection, stating that there had been testimony that no other enforcement orders had been issued in this subdivision, but other landowners "have fill material added and [have built] further seaward than one and a half feet from the escarpment line." The ALJ's order did not specifically mention the issue of equal protection, but it did contain the following catch-all provision: "Pursuant to ALC Rule 29(C), any issues raised in these proceedings, but not addressed in this Order, are deemed denied."
In the circuit court, Hill argued the ALJ erred in failing to consider his argument that the Administrative Enforcement Order violated his equal protection rights. The circuit court agreed and found "that the ALJ erred by failing and refusing [to] rule upon [Hill's] constitutional objections to [DHEC's] administrative enforcement order."
The circuit court then went on to find Hill's equal protection rights had been violated, citing Weaver v. South Carolina Coastal Council, 309 S.C. 368, 423 S.E.2d 340 (1992). In that case, Weaver was denied a permit for a boat dock after the Coastal Council (DHEC's predecessor) had granted several other permits in error but had not yet taken any enforcement action. This Court concluded the Coastal Council violated the equal protection and due process rights of Weaver by treating her differently from the other permit applicants, thereby denying her a benefit granted to others similarly situated. Id. at 375, 423 S.E.2d at 343-44.
*19 On appeal, DHEC argues Hill's assertion of an equal protection violation and the circuit court's ruling "both suffer from a distinct lack of proof," citing Grant v. South Carolina Coastal Council, 319 S.C. 348, 461 S.E.2d 388 (1995). In Grant, we observed, "The sine qua non of an equal protection claim is a showing that similarly situated persons received disparate treatment." Id. at 354, 461 S.E.2d at 391.
DHEC acknowledges that the aerial photograph it introduced into evidence "appears to show that other nearby property owners may have filled critical areas as part of bulkhead construction"; however, DHEC's cartographer, Fritz Aichele, and enforcement manager, Steve Brooks, had testified that the photograph had just been prepared the day before the hearing, and Brooks further testified that he is currently conducting compliance investigations and that the agency intends to pursue enforcement actions where violations are found to have occurred as soon as that information is compiled and synthesized.
We hold the circuit court's finding of an equal protection violation is reversible for several reasons. First, the circuit court found the ALJ erred in failing to rule on the equal protection allegation. However, it was incumbent upon Hill to show that he had clearly raised the issue to the ALJ and asked for a specific ruling in that regard in order to preserve the issue for review by the circuit court. See Home Med. Sys. v. S.C. Dep't of Revenue, 382 S.C. 556, 562-63, 677 S.E.2d 582, 586 (2009) (observing issue preservation is required in administrative appeals and a circuit court sitting in an appellate capacity may not consider issues not raised to and ruled upon by the ALC; the Court held that "Rule 59(e), SCRCP, motions are permitted in ALC proceedings").
Second, even if the circuit court was correct in determining the ALJ erred in failing to rule on this issue, a remand would have been the appropriate remedy because the circuit court's limited scope of review does not authorize it to make its own factual findings. The ALJ's order did contain a statement that all claims not expressly covered were denied. However, such an indirect ruling would not effectively give a *20 reviewing court anything to evaluate.[9]See Brown v. S.C. Dep't of Health & Envtl. Control, 348 S.C. 507, 560 S.E.2d 410 (2002) (holding where the ALJ's order was silent on an issue and thus gave no finding to effectively review, the Board lacked the authority to make its own findings of fact and should have remanded the matter to the ALJ for an order clarifying this point rather than ruling on the issue in the first instance); S.C. Coastal Conservation League v. S.C. Dep't of Health & Envtl. Control, 363 S.C. 67, 610 S.E.2d 482 (2005) (stating a reviewing court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, but may remand the matter to the agency for a determination of the issue).
Finally, DHEC properly notes that Hill had the burden of proof in this regard and he did not set forth anything to support his allegation other than noting the testimony of a DHEC witness that as of the time of the hearing, no other enforcement orders had been issued. This mere fact, standing alone, is insufficient as a matter of law to establish an equal protection violation. Hill did not provide any evidence as to the identity of the neighboring landowners and their alleged transgressions, so he did not show that he was similarly situated. See Denene, Inc. v. City of Charleston, 359 S.C. 85, 96, 596 S.E.2d 917, 922 (2004) (stating even if a governmental entity does not enforce a provision equally, "the fact that there is some unequal treatment does not necessarily rise to the level of a constitutional equal protection violation"). Since Hill offered no evidence that his situation is indistinguishable from others and no evidence of bias or discrimination, the circuit court erred in ruling Hill had established a violation of his equal protection rights.

*21 E. Timeliness of Appeal
Hill has enumerated seven arguments in the "Statement of the Issues on Appeal" of his Respondent's Brief, most of which respond to the merits of DHEC's appellate issues. However, Hill does set forth two arguments that warrant separate consideration, the first of which concerns the alleged untimeliness of this appeal.
Hill initially states the circuit court order "dated June 28, 2007 was served on the Appellant[10] and OCRM on July 23, 2007. The Appellant gave notice of appeal on August 22, 2007." Hill asserts the appeal is untimely, however, because a party must file a motion to alter or amend when an issue has been raised, but not ruled upon, in order to preserve it for review, and none of the four issues raised by DHEC were asserted in a post-trial motion. Hill states, "Neither OCRM nor the Appellant filed a Motion for Amendment under Rule 52(b), SCRCP or a Motion for Reconsideration under Rule 59(e), SCRP with the Circuit Court before giving notice of appeal." Hill maintains the appeal is, therefore, untimely as it was not "perfected," and this "is fatal to the jurisdiction of this [Court] to hear the matter."
Hill's assertion is without merit. Hill appears to have overlapped the concepts of issue preservation and timely service of a notice of appeal. Under the South Carolina Appellate Court Rules, a notice of appeal from an order or judgment of the circuit court must be served within thirty days after receipt of written notice of entry of the order or judgment. Rule 203(b)(1), SCACR. The service of a notice of appeal is a jurisdictional requirement, and the time for service may not be extended by this Court. Camp v. Camp, 386 S.C. 571, 689 S.E.2d 634 (2010).
In contrast, to preserve an issue for appellate review, a matter may not be raised for the first time on appeal, but must have been both raised to and ruled upon by the trial court. Wilder Corp. v. Wilke, 330 S.C. 71, 497 S.E.2d 731 (1998). The failure to preserve an issue for appeal does *22 not deprive an appellate court of jurisdiction to hear the appeal.
In this case, the circuit court's order was signed on June 28, 2007 and is stamped to indicate that it was actually filed with the Horry County Clerk of Court on July 24, 2007. The Notice of Appeal was served on August 22, 2007, and it states the order was received "no earlier than July 26, 2007." Therefore, the appeal was properly noticed within thirty days and was timely so as to confer jurisdiction on this Court. There is no fatal defect or lack of jurisdiction to hear this appeal.[11]

F. Standing To Appeal
Hill next asserts "[t]he League is the Appellant in this case" and that it lacks standing to pursue the appeal.
"Generally, a party must be a real party in interest to the litigation to have standing." Sloan v. Friends of the Hunley, Inc., 369 S.C. 20, 28, 630 S.E.2d 474, 479 (2006). "A real party in interest is a party with a real, material, or substantial interest in the outcome of the litigation." Id. "When an organization is involved, the organization has standing on behalf of its members if one or more of its members will suffer an individual injury by virtue of the contested act." Sea Pines Ass'n for the Protection of Wildlife, Inc. v. S.C. Dep't of Natural Res., 345 S.C. 594, 600-01, 550 S.E.2d 287, 291 (2001). "South Carolina case law has specifically recognized an injury to one's aesthetic and recreational interests in enjoying and observing wildlife is a judicially cognizable injury in fact." Id. at 601-02, 550 S.E.2d at 291-92.
Hill states the League was not an original party to the enforcement action commenced by DHEC, and it has not asserted a separate cause of action. Rather, the League was allowed to appear as an intervenor, as was Marlon Weaver, a *23 neighboring property owner. Hill maintains he "did not consent to the intervention of either the League or Mr. Weaver." Hill asserts the ALJ's order granting the motions of the League and Weaver to intervene "contains no mention of the basis for allowing the intervention by the League," and at the hearing before the ALJ, the League "presented no evidence concerning its standing, called no witnesses, and submitted no testimony or evidence of any kind concerning the issue in dispute."
Citing Rule 24(a), SCRCP (governing intervention), as well as Beaufort Realty Co. v. Beaufort County, 346 S.C. 298, 551 S.E.2d 588 (Ct.App.2001)[12] and Rule 201(b), SCACR,[13] Hill argues the interests of the League in the permitting process or in environmental issues are "coincident with those of the general public, which OCRM [DHEC] represented." Hill states there is nothing that "gave [the] League a right to intervene," and it has shown no individualized injury to itself or its members.
Although Hill states that he "did not consent" to the League's intervention, he does not state that he ever objected at the time the League's motion to intervene was granted by the ALJ. In fact, the ALJ's order specifically states that "no objection to the proposed interventions has been received" and the intervenors had satisfied all of the necessary requirements. Consequently, Hill should not be allowed to belatedly and indirectly pursue what is, in essence, an attack upon the ruling allowing the League to intervene under the guise of challenging the League's "standing" to maintain an appeal after it was allowed to intervene without objection. See Sea Cove Dev., L.L.C. v. Harbourside Cmty. Bank, 387 S.C. 95, 691 S.E.2d 158 (2010) (stating a contemporaneous objection is required to preserve an issue for appellate review); Gissel v. Hart, 382 S.C. 235, 676 S.E.2d 320 (2009) (holding the defendants would not be allowed to complain on appeal of an alleged error where they never disputed the issue below).
*24 At the hearing before the ALJ, Hill's attorney did move for intervenor Weaver to be dismissed from the action for lack of standing. After some discussion, the ALJ denied the motion. However, Hill did not contemporaneously argue the League did not have standing and in fact contended Weaver's interests could be represented by "the other intervenors [sic] in the suit" (i.e., the League) and by DHEC. Thus, he is precluded from raising this issue now.
Moreover, as noted above, the League is not the only appellant in this matter; rather, DHEC, the agency, is a co-appellant along with the League, as is clearly stated in the parties' Notice of Appeal. It is undisputed that DHEC has a real, material, and substantial interest in upholding the Administrative Enforcement Order it issued to remedy permit violations that occurred in the critical area it oversees. Therefore, the appeal is not subject to dismissal for lack of a viable appellant.

IV. CONCLUSION
We conclude the ALJ correctly found Hill had violated the terms of his permit by building a bulkhead more than 1.5' from the escarpment and that the ALJ had subject matter jurisdiction to hear this case. Accordingly, the circuit court's order is
REVERSED.
TOAL, C.J., PLEICONES, KITTREDGE and HEARN, JJ., concur.
NOTES
[1] A bulkhead is "a retaining wall designed to retain fill material but not to withstand wave forces on an exposed shoreline." S.C.Code Ann. § 48-39-270(1)(b) (2008).
[2] Marlon Weaver, who owned Lot 3 adjoining Hill's property, contended Hill had improperly filled in wetlands area in order to make his lot a buildable lot and that this had an adverse impact upon his (Weaver's) property. He has since withdrawn from participation in this case. The League asserted Hill had improperly filled in a portion of tidelands critical area and that his actions had an adverse effect upon the environment to the detriment of its members who used the area for recreational and other purposes.
[3] The review procedure under the APA was changed by 2006 South Carolina Laws Act No. 387, which eliminated the review of the ALJ's decision by the Appellate Panel. Chem-Nuclear Sys. v. S.C. Bd. of Health & Envtl. Control, 374 S.C. 201, 648 S.E.2d 601 (2007). However, this appeal continues under the prior procedure.
[4] The ALJ stated:

The regulatory and permitting violation committed by [Hill] involved the distance between his bulkhead and the escarpment on his property, not the critical line, and, while that escarpment cannot now be located, it was readily apparent at the time Ms. Fitzgerald took her measurements of the distance between the bulkhead and the escarpment and determined that the bulkhead was being constructed too far from the escarpment. See Finding of Fact # 3(A). Further, while the term "escarpment" is not defined in the regulations, its meaning is not obscure and the term provides sufficient guidance to permittees for the proper placement of an erosion-controlled bulkhead. See Merriam-Webster's Collegiate Dictionary 395 (10th ed.1993) (defining an escarpment as a "steep slope separating two comparatively level or more gently sloping surfaces and resulting from erosion or faulting").
[5] Section 48-39-210(B) (Supp.2003) provided in part as follows: "Critical areas by their nature are dynamic and subject to change over time. By generally delineating the permit authority of the Coastal Council [the predecessor to DHEC's OCRM], the Coastal Council in no way waives its right to assert permit jurisdiction at any time in any critical area on the subject property, whether shown hereon or not."
[6] See S.C.Code Ann. § 48-39-130(A) (Supp.2003) (stating "no person shall utilize a critical area . . . unless he has first obtained a permit from the department").
[7] Citations are to the provisions in effect at the time of this action, but many of these provisions still exist in the same or slightly modified form.
[8] 23A S.C.Code Ann. Regs. 30-8(F)(4) (Supp.2003) ("Once the Enforcement Order is issued the responsible party has 15 days to appeal the Order to the Administrative Law Judge Division pursuant to R.30-6. Failure to act within 15 days will result in the Department seeking enforcement of the order in Circuit Court.").
[9] Although we find the order in this case is sufficient since the burden was on Hill in the first instance to specifically raise any alleged error, provide supporting proof, and seek a ruling on the issue thus raised, we take this opportunity to remind the bench of the need to make specific findings. Implicit findings, as well as general statements and conclusions, do not provide sufficient detail for appellate review. See Able Commc'ns, Inc. v. S.C. Pub. Serv. Comm'n, 290 S.C. 409, 411, 351 S.E.2d 151, 152 (1986) ("The findings of fact of an administrative body must be sufficiently detailed to enable the reviewing court to determine whether the findings are supported by the evidence and whether the law has been properly applied to those findings.").
[10] Hill refers to the League as the only appellant. However, the Notice of Appeal and other materials before this Court clearly indicate that both DHEC and the League are appealing the circuit court's order.
[11] DHEC asserts Rule 59 is not applicable because the circuit court was sitting in an appellate capacity, not as a trial court. However, the circuit court has the authority to hear motions to alter or amend when it sits in an appellate capacity and such motions are required to preserve issues for appeal where the circuit court fails to rule on an issue. City of Rock Hill v. Suchenski, 374 S.C. 12, 646 S.E.2d 879 (2007).
[12] "An organization has standing only if it alleges that it or its members will suffer an individualized injury; a mere interest in a problem is not enough." Beaufort Realty Co. v. Beaufort County, 346 S.C. 298, 301, 551 S.E.2d 588, 589 (Ct.App.2001) (citation omitted).
[13] Rule 201(b), SCACR (stating only a party aggrieved by an order, judgment, sentence, or decision may appeal).