# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Kiawah Development Partners, II, Respondent,

v.

South Carolina Department of Health and Environmental Control, Appellant,

and

South Carolina Coastal Conservation League, Appellant,

v.

South Carolina Department of Health and Environmental Control, and Kiawah Development Partners, II, of whom South Carolina Department of Health and Environmental Control is, Appellant, and Kiawah Development Partners, II, is Respondent.

Appellate Case No. 2016-000707

<hr>

Appeal From The Administrative Law Court
The Honorable Ralph King Anderson, III, Administrative Law Judge

<hr>

Opinion No. 27790
Heard September 27, 2017 – Filed April 18, 2018

<hr>

**AFFIRMED AS MODIFIED**

<hr>

Amy Elizabeth Armstrong, of South Carolina
Environmental Law Project, of Pawleys Island and
Bradley David Churdar, of South Carolina Department of
Health and Environmental Control, of Charleston, for
Appellants.

G. Trenholm Walker and Thomas P. Gressette, Jr., both of
Walker Gressette Freeman & Linton, LLC, of Charleston,
for Respondent.

---

**JUSTICE HEARN:** This case comes to the Court a second time following an order issued by the Administrative Law Court (ALC) ordering the installation of an erosion control structure along the shoreline of the Kiawah River on Captain Sam's Spit. Because we find a portion of the structure authorized by the ALC is not supported by substantial evidence, we affirm the order as modified, as more fully explained herein.

## FACTUAL BACKGROUND

The complete history of litigation surrounding the installation of erosion control structures on Captain Sam's Spit can be found in our earlier opinion, *Kiawah Develop Partners, II v. South Carolina Department of Health and Environmental Control*, 411 S.C. 16, 766 S.E.2d 707 (2014). The litigation arose after Respondent Kiawah Development Partners, II (KDP) applied for a permit to build an erosion control structure consisting of a bulkhead and revetment along the Kiawah River on Captain Sam's Spit in order to facilitate residential development of the upland property. The South Carolina Department of Health and Environmental Control (DHEC) denied the majority of the permit but granted a 270-foot portion to protect public access to Beachwalker Park. Thereafter, the ALC held a contested case hearing where KDP challenged DHEC's denial of the majority of the requested permit, and the South Carolina Coastal Conservation League (the League) contested the issuance of the permit for the 270-foot structure and sought to uphold the denial of the remainder of the permit. After the ALC ruled in favor of KDP and issued an order authorizing the installation of a bulkhead and revetment running 2,783 feet along the shoreline, both DHEC and the League appealed to this Court. We reversed and remanded the ALC's order, finding several errors of law in its application of the

public trust and various provisions of the Coastal Zone Management Act[1] (CZMA). *See id.* at 44, 766 S.E.2d at 723.

On remand, the ALC reconsidered the evidence presented at the hearing and authorized the installation of a 270-foot tandem bulkhead and revetment along the shoreline adjacent to the parking lot of Beachwalker Park, as well as a vertical bulkhead only that spanned an additional 2,513 feet along the shoreline of Captain Sam's Spit. Now on appeal, DHEC argues the ALC erred in approving the structure aside from the 270 feet protecting access to Beachwalker Park, while the League contests the entirety of the erosion control structure.

## STANDARD OF REVIEW

The Administrative Procedures Act establishes the standard of review in appeals from the ALC. S.C. Code Ann. § 1-23-610(B) (Supp. 2017). The Act constrains an appellate court from reweighing the evidence presented to the ALC, but the appellate court may reverse or modify a decision if the ALC's findings or conclusions are:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Id.*

In determining whether the ALC's decision is supported by substantial evidence, the Court need only find evidence from which reasonable minds could

---

[1] Title 48, Chapter 39 of the South Carolina Code (2008 & Supp. 2017).

reach the same conclusion as the ALC.  *Hill v. S.C. Dept. of Health and Envtl. Control*, 389 S.C. 1, 9–10, 698 S.E.2d 612, 617 (2010).

## DISCUSSION

### I. Substantial Evidence

DHEC and the League both contend the ALC erred by approving the construction of 2,513 feet of vertical bulkhead, without a revetment, because this structure is not supported by substantial evidence.  We agree.

The structure KDP identified in its application for a critical area permit consisted of two components:  a vertical bulkhead and a sloping revetment. Throughout the original hearing and on remand, the record indicates KDP maintained the vertical bulkhead and sloping revetment constituted one unified structure.  The testimony presented to the ALC illustrated each component served a complementary function: the vertical bulkhead would prevent erosion of the upland and the revetment would prevent erosion of the sandy shoreline along the toe of the bulkhead.[2]  Taken alone, neither structure would accomplish the results desired by KDP.  In fact, KDP's project engineer, Mitchell Bohannon, testified a vertical bulkhead alone, without anything to protect the toe against reflective wave energy, would cause "even more exacerbated erosion."  With that understanding, KDP's engineers designed the structure as a tandem bulkhead and revetment.  Additionally, Dr. Rob Young, the League's expert in coastal geology, explained how the sand from the upland dunes acted like a conveyor belt to feed the shoreline along the Kiawah River.  Young testified that the vertical bulkhead would choke off this supply of sand, effectively shutting down the conveyor belt that replenishes the eroded sand and eliminating the beach as it currently exists.

In approving a permit for the vertical bulkhead only, the ALC impermissibly authorized an entirely distinct structure from that which KDP applied for—one that

---

[2] Additionally, this testimony is consistent with the definitions of "bulkhead" and "revetment" contained in Title 48, Chapter 39.  A "bulkhead" is defined as "a retaining wall designed to retain fill material but not to withstand wave forces on an exposed shoreline."  S.C. Code Ann. § 48-39-270(1)(b) (2008).  A "revetment" is defined as "a sloping structure built along an escarpment or in front of a bulkhead to protect the shoreline or bulkhead from erosion."  S.C. Code Ann. § 48-39-270(1)(c) (2008).

lacked any evidentiary support. The parties did not present *any* testimony that could serve as a basis for the ALC's authorization of the bulkhead only. To the contrary, all of the evidence in the record indicated the revetment was critical to protect the toe of the bulkhead from increased erosion. Without the revetment, the expert testimony established that a bulkhead alone would exacerbate erosion in the long run, ultimately making the bulkhead itself susceptible to collapse. Thus, the ALC's authorization of the bulkhead only was contrary to the reliable, probative evidence contained in the record.

The error of this decision is twofold: (1) the testimony supports the conclusion that this structure would fail in the long run without a revetment to protect the shoreline from erosion, and (2) the bulkhead alone would be more injurious to the public's use of the critical area because the existing shoreline would ultimately be lost to erosion, without any source of upland sand to replenish it. The result would therefore jeopardize upland property owners and have detrimental effects on the public's use of the critical area. With the loss of shoreline, the public could no longer use the area for the recreational purposes many citizens currently enjoy.

For the reasons we enumerated in our previous opinion, we decline to amend the ALC's order by authorizing a revetment to complement the vertical bulkhead because of the revetment's impact on the public trust. *See Kiawah*, 411 S.C. at 30, 766 S.E.2d at 716 (explaining "that only the developer, not the *public*, would benefit from the construction of this enormous bulkhead and revetment") (emphasis in original). Instead, we modify the ALC's order by approving only the 270-foot bulkhead and revetment along the Beachwalker Park access area because that structure is supported by substantial evidence, and protecting the parking lot is manifestly important to ensuring the public can continue to enjoy access to its public tidelands.

## II. Additional Claims

If DHEC and the League presented unified views on the entirety of the ALC's order, our analysis of the substantial evidence issue would dispose of the need to address the remaining issues raised by the parties. However, we recognize the interests of the parties diverge with regard to the 270-foot structure along the Beachwalker Park access area. While DHEC agrees with the ALC's authorization of this section of the structure, the League contests this decision. Based on our review of the record and the applicable law, we dispose of the remainder of the League's challenges summarily. We find no error in the ALC's decision to authorize

a permit for the erosion control structure in that area. The evidence of public benefit from protecting the parking lot is abundant, and the structure is essential to ensuring the public may continue to enjoy access to its public tidelands on the Spit. On the other hand, the installation of the structure in this area will have a *de minimis* impact on the public trust lands because the record indicates that area of the riverbank is not of a high recreational or ecological value. Accordingly, the ALC did not err in ruling that the 270-foot bulkhead and revetment provide the maximum benefit to the people. *See* S.C. Code Ann. § 48-39-30(D) (2008) ("Critical areas shall be used to provide the combination of uses which will insure the maximum benefit to the people, but not necessarily a combination of uses which will generate measurable maximum dollar benefits.").

The League also argues the ALC erred in its interpretation of Regulation 30-11(C)(1) (2011).[3] We find no error in the ALC's interpretation of the regulation as applied to the 270-foot structure. Ensuring continued access to Beachwalker Park by protecting the parking area is in line with the current character of the Spit as a valued recreational destination. Failing to protect this public access could diminish the public's interest in keeping the critical area on the Spit in its current pristine condition. Moreover, throughout the litigation, DHEC has agreed with the ALC's decision to grant a permit for the 270 feet adjacent to the parking lot. Accordingly, the ALC's order in this regard is consistent with DHEC's interpretation of the regulation.

Lastly, the League argues the ALC erred in its feasible alternatives analysis pursuant to Regulation 30-12(C) (2011). Under our standard of review, we find no reversible error in the ALC's analysis with regard to the 270-foot section because there is evidence in the record to suggest building the structure in that limited location is critical to protecting the Beachwalker Park parking lot.

## CONCLUSION

In reviewing the evidence presented by the parties, including lay and expert witness testimony, we affirm the ALC's decision to authorize the 270-foot bulkhead and revetment along the Beachwalker Park parking lot. However, we find there is

---

[3] Regulation 30-11(C)(1) states that in its analysis under Section 48-39-150 of the South Carolina Code (2008 & Supp. 2017), DHEC must consider "The extent to which long-range, cumulative effects of the project may result within the context of other possible development and the general character of the area."

no evidence in the record to support the authorization of the 2,513-foot bulkhead without a revetment.  Therefore, we modify the ALC's order and delete the portion authorizing a permit for the bulkhead only.

**AFFIRMED AS MODIFIED.**

**BEATTY, C.J., and JAMES, J., concur.  KITTREDGE, J., concurring in result only.  FEW, J., concurring in a separate opinion.**

**JUSTICE FEW:** I concur in the majority's analysis and in the result reached through that analysis. I write separately because I believe there is one key element of that analysis that warrants further explanation. The majority states "the ALC erred by approving the construction of 2,513 feet of vertical bulkhead, without a revetment, because this structure is not supported by substantial evidence." However, it is not the structure that is unsupported by the evidence. The structure, if it is ever built, will be supported by sand. In the legal analysis, it is the ALC's finding—2,513 feet of bulkhead without a revetment satisfies the public benefit requirement of subsection 48-39-30(D)—that is not supported by substantial evidence.

Subsection 48-39-30(D) provides, "Critical areas shall be used to provide the combination of uses which will insure the maximum benefit to the people, . . . ." S.C. Code Ann. § 48-39-30(D) (2008); *see also Kiawah Dev. Partners, II v. S.C. Dep't of Health & Envtl. Control*, 411 S.C. 16, 41, 766 S.E.2d 707, 722 (2014) (stating "any use of tidelands must be to the public benefit, which is embodied in section 48-39-30(D)'s 'maximum benefit' to the public requirement."). The ALC approved the installation of a 270-foot tandem bulkhead and revetment along the shoreline adjacent to Beachwalker Park, and an additional 2513-foot bulkhead—with no revetment—along the shoreline of Captain Sam's Spit. In doing so, the ALC necessarily found this combination of structures would provide "the maximum benefit to the people" under subsection 48-39-30(D).

The ALC's finding that the 2513-foot bulkhead without the revetment meets the public benefit requirement set forth in section 48-39-30(D) is contrary to the reliable, probative evidence contained in the record. In fact, as the majority correctly points out, "all of the evidence in the record indicated the revetment was critical to protect the toe of the bulkhead from increased erosion. Without the revetment, the expert testimony established that a bulkhead alone would exacerbate erosion in the long run, ultimately making the bulkhead itself susceptible to collapse." There is no evidence to support the ALC's finding that a bulkhead alone—without a revetment—satisfies the public benefit requirement of subsection 48-39-30(D).