524 S.E.2d 416

CANAL INSURANCE COMPANY, Respondent,

v.

Hercules CALDWELL and Jessie Caldwell, d/b/a Caldwell Trucking, Ruth William Brown, Robert Steven Anglin, Walter S. Zeigler, Truck Supply Company, Inc., Erika E. Hennington, Donna W. Parker, James L. McNaughton, and Temperature Control Service,

of whom, Erika E. Hennington and Donna W. Parker, are Appellants.

No. 3073.

Court of Appeals of South Carolina.

Submitted Sept. 8, 1999.
Decided Nov. 22, 1999.
Rehearing Denied Dec. 4, 1999.

J. Marvin Mullis, Jr. and Frank A. Barton, both of Mullis & Barton, of Columbia, for appellants.

Nancy Hyder Robinson and O. Doyle Martin, both of Leatherwood, Walker, Todd & Mann, of Greenville, for respondent.

CONNOR, Judge:

In this declaratory judgment action, the trial court rescinded Canal Insurance Company's contract with Caldwell Trucking. Erika E. Hennington and Donna W. Parker appeal. We affirm.

## FACTS/PROCEDURAL HISTORY

At 11:25 a.m. on July 14, 1994, a dump truck owned by Caldwell Trucking was involved in a multi-vehicle accident on Interstate 20 in Columbia. A second Caldwell truck, following

at some distance behind the first, subsequently radioed in to the home office that "it was one of our trucks involved." Shortly thereafter, Hercules Caldwell, the owner of Caldwell Trucking, sent Ann Jackson, an employee, to the Shelton Brown Agency to renew the company's lapsed insurance policy.[1] Caldwell specifically instructed Jackson to inquire if the policy could be made retroactive to the time the insurance agency had opened that morning.

At the Shelton Brown office, Jackson completed an application for insurance and inquired when the coverage would begin. Feeling "a little uncomfortable" with this question, Lisa Meetze, an agency employee, relayed the information to Jimmy Brown, the agency owner. Brown called Kay Culberson at Canal Insurance Company (Canal), his trucking insurance underwriter, and asked if Caldwell's renewal premium was still valid. Culberson replied that it was and offered to "bind" the policy into immediate effect. Brown agreed and the policy was bound at 12:45 p.m. Meetze later receipted the down payment on the policy premium at 12:53 p.m.

Later that afternoon, Hercules Caldwell phoned Brown and told him there had been an accident involving one of his company trucks. Caldwell asked Brown if the accident was covered, and Brown replied that it would be if it occurred after the policy was bound. Caldwell indicated he did not know the time of the accident, but stated he would send Brown a copy of the accident report when he received it. Caldwell subsequently sent Brown a copy of the F.R.10 accident report on July 18. After calling Canal to confirm the accident was not covered, Lisa Meetze returned the form to Caldwell with an attached note stating that "Canal Insurance Company will not cover this accident due to the fact that your

---

1. The Shelton Brown Agency had handled Caldwell Trucking's insurance business for several years. Apparently, Hercules Caldwell usually financed his premium, often letting as much as a month or more pass before paying the down payment to obtain a new policy. Caldwell's prior policy lapsed on June 16, 1994, and no one from Caldwell Trucking attempted to revive coverage until July 14.

policy was bound at 12:45 p.m. and the accident occurred at 11:25 a.m."

On July 19, Canal issued Caldwell's insurance policy and filed a Form E "Certificate of Insurance" with the Public Service Commission (PSC) as required. The PSC accepted the filing on July 21. On September 27, however, Canal wrote a letter to the PSC's staff counsel requesting an amendment to the Form E due to error. The letter stated that Canal's initial filing reflected the correct date of July 14, but that the preprinted Form E showed the effective time of the policy as 12:01 a.m. when it should have read 12:45 p.m. The letter noted that Canal desired a change on the form "to reflect the company's intent that the filing effective time and date is intended to coincide with the effective time and date of the policy of insurance." On October 4, 1994 Canal sent Caldwell a notice of cancellation of the policy, effective October 14.

In the interim Canal filed a declaratory judgment action to determine its right to deny coverage to Caldwell Trucking for the July 14 accident. Donna Parker, individually and as guardian ad litem for her daughter Erika Hennington, who was seriously injured in the accident, answered and counter-claimed for a declaration that the accident was fully covered under Caldwell's policy with Canal. Both parties subsequently moved for summary judgment and the trial court held a hearing on January 21, 1997. By order dated March 17, 1997, the trial court granted Canal's motion. A form judgment, entered on March 19, 1997, indicated that copies were mailed to all attorneys of record.

On June 24, 1997 Parker's counsel, apparently not having received a copy of the judgment form, wrote counsel for Canal and inquired about the status of the final order. Canal's attorney responded via fax and mail on July 8, expressing surprise that opposing counsel had not been notified of the judgment and stating that it had been entered on March 19 as Judgment Roll Number 211763. Thereafter, on August 8, Parker's counsel wrote the clerk of court and requested a copy of the judgment. He received the copy on August 12 and

subsequently filed a motion to reconsider on August 22. The trial court held a hearing on December 19. Over the objection of Canal's counsel, the court ruled that the motion to reconsider was timely. On February 18, 1998, the trial court withdrew its prior order from the previous March, and substituted a revised order dated February 3, 1998. It is from this order that Parker now appeals.

## LAW/ANALYSIS

Initially, Canal contends this court lacks subject matter jurisdiction to hear Parker's appeal. Rule 203(b), SCACR, requires a party to serve his notice of appeal within thirty days after receiving written notice of the entry of a final order or judgment, and failure to do so divests this court of subject matter jurisdiction and results in dismissal of the appeal. *First Carolina Nat'l Bank v. A & S Enterprises, Inc.*, 272 S.C. 339, 251 S.E.2d 762 (1979); *Burnett v. South Carolina State Highway Dep't*, 252 S.C. 568, 167 S.E.2d 571 (1969). When a *timely* motion to alter or amend is made, however, "the time for appeal for all parties shall be stayed and shall run from receipt of written notice of entry of the order granting or denying such motion." Rule 203(b)(1), SCACR. *see also* Rule 59(f), SCRCP ("The time for appeal for all parties shall be stayed by a *timely* motion under this Rule . . . .") (emphasis added); *Otten v. Otten*, 287 S.C. 166, 167, 337 S.E.2d 207, 208 (1985) (stating that when a motion to alter or amend is made under Rule 59, "the time for appeal from the judgment begins to run from the time of the order granting or denying the motion"). To be timely, a post-trial motion to alter or amend must be served within ten days of receipt of written notice of the entry of the original order or judgment. Rule 59(e), SCRCP; *Coward Hund Constr. Co. v. Ball Corp.*, 336 S.C. 1, 518 S.E.2d 56 (Ct.App.1999).

■ Even if Parker's counsel did not in fact receive the trial court's original form order, there is no question that he received written notice of entry of the judgment, including the judgment roll number, from opposing counsel on July 8, 1997. *Cf. Priester v. Priester*, 131 S.C. 284, 127 S.E. 18 (1925) (wherein acceptable notice of the filing of the trial court's

decree was given by attorney to opposing counsel). Because Parker's attorney waited a month to request a copy of the order, his Motion for Reconsideration and Amendment of Judgment, served on August 22, was not timely. *See* Rule 59(f), SCRCP; *Coward Hund,* 336 S.C. at 3, 518 S.E.2d at 57. As a result, the motion did not stay the time for appeal and Parker should have served notice on or before August 7. Parker, however, did not serve a notice of appeal until March 17, 1998. Accordingly, this court does not have subject matter jurisdiction in this matter.

■ In any case, even if this appeal were timely, Parker would not prevail. In its revised order, the trial court found, at least implicitly, that Caldwell's policy with Canal became effective at 12:45 p.m. on July 14, 1994. Evidence in the record, including the express agreement of the parties, the insurance policy application, the policy itself, and the policy endorsements, fully supports this finding. Parker, on the other hand, argues Caldwell's coverage began at 12:01 a.m. on July 14, because the "Certificate of Insurance" filed with the PSC so stated. In this required filing, Canal inadvertently let the time preprinted on the Form E, 12:01 a.m., remain after filling in the date, 7/14/94. Parker claims this form essentially "ratified" 12:01 a.m. as the effective time of the policy. We disagree.

Pursuant to S.C.Code Ann. § 58–23–910 (Supp.1998), all motor vehicle carriers must file with the PSC proof of liability and property damage insurance, a surety bond, or a certificate of self-insurance before an operating certificate can be granted. Such proof is typically offered by way of a standard Form E, wherein the carrier's insurer certifies that the requisite coverage has been obtained. The obvious purpose of this requirement is to ensure compliance with all aspects of this state's motor vehicle carrier laws, and not, as Parker contends, to determine the effective date of coverage of each carrier's policy. *Cf. Metcalf v. U.S. Fidelity & Guaranty Co.,* 269 S.C. 309, 237 S.E.2d 370 (1977) (stating that effect of insurance company's certificate asserting its insurance of Metcalf under state's financial responsibility laws was to certify

that the policy provided the statutory coverage); *National Serv. Fire Ins. Co. v. Jordan*, 258 S.C. 56, 187 S.E.2d 230 (1972) (purpose of the written certificate of insurance carrier was to certify that there was in effect a motor vehicle liability policy for the benefit of Jordan, who was required to furnish proof of financial responsibility). Furthermore, the policy on its face stated the effective time of coverage as 12:45 p.m. Caldwell agreed with this and all other company documents coincided. We conclude the time referenced in the Form E filed by Canal was basically a scrivener's error, especially in light of Canal's subsequent amendment letter.

■ Parker also asserts Canal's coverage of Caldwell began at 12:01 a.m. because Canal charged and retained a full day's premium for July 14. This argument is without merit.

■ It is undisputed Canal charged Caldwell a premium rated for a full day of coverage on July 14.[2] Consequently, Parker contends either waiver or estoppel precludes Canal from denying coverage for the full day beginning at 12:01 a.m. While these defenses may apply in some cases when an insurer accepts and retains a premium for coverage that by the terms of the policy itself is excluded or terminated, they do not apply here. *See Pitts v. New York Life Ins. Co.*, 247 S.C. 545, 552, 148 S.E.2d 369, 371 (1966) (stating application of doctrines of waiver and estoppel on this basis "must of course depend upon the circumstances of the particular case"). Instead, in this instance, none of the elements of estoppel are present.[3] Similarly, the record contains no evidence of waiver,

---

2. Testimony in the record confirms this is standard industry practice. Because the S.C. Department of Insurance requires the filing of rates for commercial trucking insurance based on *annual* premiums, the cost to the insurer is the same per day whether coverage is bound at 12:01 a.m. or at any point thereafter. In addition, coverage always expires one year from the date of the policy at 12:01 a.m., regardless of the time of day the policy was actually bound the previous year.

3. The elements of estoppel that must be shown are (1) ignorance of the party invoking it of the truth as to the facts in question, (2) representa-

either implied or express. *See id.* at 552, 148 S.E.2d at 371 (stating that implied waiver "results merely from conduct of the party against whom the doctrine is invoked from which voluntary relinquishment of his known right is reasonably inferable"); *Janasik v. Fairway Oaks Villas,* 307 S.C. 339, 344, 415 S.E.2d 384, 387 (1992) ("A waiver is a voluntary and intentional abandonment or relinquishment of a known right."); *Bonnette v. State,* 277 S.C. 17, 282 S.E.2d 597 (1981) (stating acts inconsistent with the continued assertion of a right may give rise to a waiver). Parker has not met her burden of proving either affirmative defense. *See Provident Life and Accident Ins. Co. v. Driver,* 317 S.C. 471, 451 S.E.2d 924 (Ct.App.1994).

Because we find Caldwell's policy with Canal was effective at 12:45 p.m. on July 14, and that no defense posited by Parker applies, the decision of the court below is

**AFFIRMED.**

GOOLSBY and ANDERSON, JJ., concur.

---

tions or conduct of the party estopped which misled, (3) reliance upon such representation or conduct, and (4) prejudicial change of position as a result of such reliance. *Standard Fire Co. v. Marine Contracting and Towing Co.,* 301 S.C. 418, 421, 392 S.E.2d 460, 462 (1990); *Pitts,* 247 S.C. at 552, 148 S.E.2d at 371.