392 S.C. 247 (2011)
708 S.E.2d 812
George E. WHITE, Respondent,
v.
SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL and Coffin Point Plantation Homeowners Association, Defendants,
Of whom Coffin Point Plantation Homeowners Association is, Appellant.
No. 4812.
Court of Appeals of South Carolina.
Submitted January 4, 2011.
Decided March 23, 2011.
*250 James J. Wegmann and Brian R. Murphy, both of Beaufort, for Appellant.
Leslie S. Riley, of Charleston, and Robert L. Widener, of Columbia, for Respondent.
PER CURIAM:
Appellant Coffin Point Plantation Homeowners Association (Coffin Point) seeks review of an order of the Administrative Law Court (ALC) requiring Coffin Point to rebuild its private community dock in accordance with its permit as originally issued on November 15, 2004, by the South Carolina Department of Health and Environmental Control, Office of Ocean and Coastal Resource Management (OCRM). Coffin Point argues that the administrative law judge (ALJ) erred in concluding that the location of the dock constitutes a material harm to the policies of the South Carolina Coastal Zone *251 Management Act, S.C.Code Ann. § 48-39-10 to -360 (2008 & Supp.2010) (the Act). We affirm.[1]

FACTS/PROCEDURAL HISTORY
In 2004, Coffin Point submitted an application for a permit to build a community dock on Coffin Creek in Beaufort County. A drawing attached to the application showed that the proposed dock would be located twenty feet from the extended property line between Coffin Point's property and the property of Respondent George White (White), who maintained a commercial dock for shrimpers to buy fuel and ice. The drawing depicted the extended property line as a straight line extension of the high ground property line. OCRM then issued a permit that included the drawing of the proposed dock. After Coffin Point built the dock so that it crossed White's extended property line, White sought OCRM's assistance in enforcing the permit as written.
OCRM contacted Coffin Point and ultimately determined that the dock was built in compliance with the permit "as the [attached] drawing was intended to be interpreted." OCRM advised Coffin Point to submit an "after-the-fact permit amendment request." Coffin Point submitted the request along with an "as-built" survey. The survey purports to show an extended property line, but rather than a straight line extension of the high ground property line, the survey shows a line extending into the creek at a forty-five degree angle. OCRM then amended the original permit to authorize "the existing after-the-fact community dock alignment in accordance with the submitted survey." White sought a contested case hearing to challenge the permit as amended.
The ALJ issued a written order requiring Coffin Point to rebuild its dock in accordance with the permit as originally issued. The ALJ later issued an amended order to correct a clerical error in the original order. This appeal followed.

ISSUES ON APPEAL
1. Does this court have jurisdiction over Coffin Point's appeal when it served the notice of appeal over thirty *252 days after OCRM sent the ALJ's order to Coffin Point by electronic mail?
2. Did the ALJ err in interpreting the term "navigation" before concluding that the location of Coffin Point's dock constituted a significant navigational hazard?
3. Did the ALJ err in concluding that the location of Coffin Point's dock constituted a material harm to the policies of the Act?

STANDARD OF REVIEW
Under the Administrative Procedures Act, the ALJ presides as the fact-finder in contested cases. Hill v. S.C. Dep't of Health and Envtl. Control, 389 S.C. 1, 9, 698 S.E.2d 612, 616 (2010). "[T]his Court's [review] is limited to determining whether the findings were supported by substantial evidence or were controlled by an error of law." Id. at 9, 698 S.E.2d at 617. "In determining whether the ALJ's decision was supported by substantial evidence, this Court need only find, looking at the entire record on appeal, evidence from which reasonable minds could reach the same conclusion that the ALJ reached." Id. at 9-10, 698 S.E.2d at 617. "The mere possibility of drawing two inconsistent conclusions from the evidence does not prevent a finding from being supported by substantial evidence." Id.

LAW/ANALYSIS

I. Appellate Jurisdiction

Rule 203(b)(6), SCACR, provides that when a statute allows a decision of the ALC to be appealed directly to this court, the notice of appeal must be served on the agency, the ALC, and all parties of record within thirty days after "receipt of the decision." Here, Coffin Point served the Notice of Appeal on March 12, 2009. White argues that Coffin Point received the ALJ's January 28, 2009 decision on February 9, 2009, when OCRM's counsel e-mailed a signed and filed copy of the decision to Coffin Point's counsel. White notes that Coffin Point's counsel responded by e-mail the same day (February 9th) and outlined his initial thoughts on the decision, thus showing that counsel received the decision on this *253 date. A Coffin Point representative then responded to both counsel pointing out a clerical error in the ALJ's decision.
Coffin Point's counsel does not deny receiving the e-mail transmission of the ALJ's January 28, 2009 decision. Rather, counsel maintains that Rule 203(b)(6) contemplates receipt of the decision through proper service by mail or hand delivery and that the applicable rules do not authorize service of the decision by e-mail.[2] Accordingly, the thirty-day period in which to file a notice of appeal did not commence on the day that counsel received the decision via e-mail. We agree.
While we have found no South Carolina case law discussing the application of Rule 203(b)(6) to the precise set of facts present in this case, this court's opinion in Trowell v. South Carolina Department of Public Safety is instructive. 384 S.C. 232, 681 S.E.2d 893 (Ct.App.2009). In Trowell, this court declined to hold that the facsimile of an agency's final decision regarding an employee grievance constituted proper service for the purpose of initiating the time frame in which the employee had to file his appeal. 384 S.C. at 235-37, 681 S.E.2d at 895-96. The court noted that the Department of Public Safety's interpretation of its grievance procedure created a rule that it had never before employed or sought to enforce. Id. at 236, 681 S.E.2d at 896. The court further noted that such a rule was not included in any written materials or guidelines available to the public or the bar. Id. at 236-37, 681 S.E.2d at 896. The court observed that the Department's decision "arbitrarily created a trap for the unwary petitioner." Id. at 237, 681 S.E.2d at 896. The court held that the employee's substantial rights were prejudiced due to the arbitrary and capricious nature of the Department's interpretation of its grievance procedure. Id. at 237, 681 S.E.2d at 896.
*254 Here, there is nothing in the current applicable rules that authorizes service of a decision of the ALC by electronic mail.[3] Hence, the circumstances of this case are analogous to those in Trowell. Prior to the time that Coffin Point filed its appeal in 2009, there was no official written rule or notice about the binding effect of the service of an order by electronic mail. Therefore, due process does not allow this court to recognize such service in applying Rule 203(b)(6), SCACR, to determine the timeliness of the appeal in this case. Cf. State v. Collins, 329 S.C. 23, 28 n. 4, 495 S.E.2d 202, 205 n. 4 (1998) (recognizing that although the ex post facto clause itself does not apply to actions of the judicial branch, judicial decisions applied retroactively can violate the Due Process Clause and that an unforeseeable judicial enlargement of a criminal statute, applied retroactively, "operates precisely like an ex post facto law").
Further, ALC Rules 5 and 29(C) contemplate service of an ALC decision by the ALC via the United States Postal Service and not by a party via electronic mail.[4] White relies on the opinions in Ackerman v. 3-V Chemical, Inc., 349 S.C. 212, 562 S.E.2d 613 (2002), and Canal Insurance Co. v. Caldwell, 338 S.C. 1, 524 S.E.2d 416 (Ct.App.1999), in support of his assertion that service of the decision by DHEC's counsel was a proper substitute for service by the ALC. However, those cases involved a determination of timeliness under Rule 203(b)(1), SCACR, which governs appeals from the court of common pleas and designates the commencement of the period in which to appeal as "receipt of written notice of entry of the order[.]" Ackerman, 349 S.C. at 215-16, 562 S.E.2d at 615; Canal, 338 S.C. at 5-6, 524 S.E.2d at 418. The analyses in both Ackerman and Canal explicitly distinguished the receipt of notice of the entry of an order from receipt of the order itself. Id. Receipt of notice was the critical event in Ackerman and Canal, whereas receipt of the order itself is the critical event under Rule 203(b)(6), SCACR, in the present *255 case. Therefore, Ackerman and Canal are not instructive in analyzing the "receipt" of an ALJ's decision within the meaning of Rule 203(b)(6), SCACR.
Based on the foregoing, the motion to dismiss is without merit.

II. Navigation

Coffin Point maintains that the ALJ misinterpreted the term "navigation" within the meaning of Regulation 30-12(A)(1)(p) of the South Carolina Code (Supp.2010) when she concluded that the location of Coffin Point's dock constitutes a significant navigational hazard and thus a "material harm to the policies of the Act." Coffin Point argues that policing disputes between neighboring dock owners is not contemplated by the policies of the Act. Because members of the public are affected by Coffin Point's dock, this case is not a mere dispute between neighboring dock owners. Therefore, we disagree with Coffin Point's assignment of error.
Initially, White contends that Coffin Point's challenge of the ALJ's interpretation of the term "navigation" is not preserved for review because Coffin Point did not raise this precise issue in its Prehearing Statement, at the hearing, or in its proposed order. We disagree. In her written order, the ALJ ruled for the first time on the proposed dock's effect on navigation. She made this ruling in the context of addressing whether allowing the proposed dock to cross extended property lines would cause material harm to the policies of the Act. This issue was properly before the ALJ when White sought a contested case hearing to challenge the amended permit on the ground that it allowed Coffin Point's dock to cross their shared extended property line. Therefore, the challenge to the ALJ's interpretation of "navigation" is preserved for review.
Turning to the merits of the issue, Regulation 30-12(A)(1)(p) states:
No docks, pierheads or other associated structures will be permitted closer than 20 feet from extended property lines with the exception of joint use docks shared by two adjoining property owners. However, the Department may allow *256 construction closer than 20 feet or over extended property lines where there is no material harm to the policies of the Act.

(emphasis added). Coffin Point cites the case of Dorman v. South Carolina Department of Health and Environmental Control in support of its argument that policing disputes between neighboring dock owners is not within the policies of the Act. 350 S.C. 159, 171, 565 S.E.2d 119, 126 (Ct.App.2002). Dorman involved objections to a proposed boat dock from neighbors on both sides of the applicant's property. 350 S.C. at 162-63, 565 S.E.2d at 121. The neighboring property owners objected on the grounds that the proposed dock would crowd too close to their existing docks and the roof would impinge on their view. 350 S.C. at 163, 565 S.E.2d at 121. This court adopted OCRM's interpretation of Regulation 30-12, which included the position that any navigational issue between docks is a private property issue. Id. at 171, 565 S.E.2d at 126. Specifically, the Appellate Panel of OCRM stated "It is not the policy of OCRM to police navigational disputes that should be dealt with among the adjacent property owners." Id. at 163, 565 S.E.2d at 121 (internal quotation marks omitted). This court remanded the case to the ALJ to determine whether the permit should be granted in light of OCRM's interpretation of Regulation 30-12. Id. at 171-72, 565 S.E.2d at 126.
In contrast, the present case involves the disruption of a commercial enterprise and its customers. The objection lodged by White does not involve merely a private dispute with Coffin Point, but also concerns the needs of White's customers, who themselves are members of the public, and the local shrimping industry in general. Unlike Dorman, this case does not involve a mere private navigational dispute. Therefore, the ALJ's conclusion that the location of Coffin Point's dock presents a significant navigational hazard does not conflict with OCRM'S policy of avoiding the regulation of private navigational disputes.
Coffin Point also argues that in interpreting the term "navigation," the ALJ overlooked the public's ability to navigate the creek in general and instead focused too narrowly on the inability of White's customers to navigate to and from White's dock under specific conditions. The ALJ's amended *257 order addresses this point by citing from Chapter III of Part II of the Coastal Management Program: "The policies of the Coastal Management Program include [the policy that] `docks and piers will not be approved where they interfere with navigation or reasonable public use of the waters.'" (emphasis added). Because White's customers are members of the public, their navigation to and from White's commercial dock to conduct business constitutes "reasonable public use of the waters" within the meaning of the Coastal Management Program.
Even if the ALJ's interpretation of navigation as used in Regulation 30-12 was too broad, the error is harmless and therefore not reversible. See Jensen v. Conrad, 292 S.C. 169, 172, 355 S.E.2d 291, 293 (Ct.App.1987) (holding that a judgment will not be reversed for insubstantial errors not affecting the result). In support of her decision, the ALJ also relied on section 48-39-150(A)(10) of the South Carolina Code (2008), which requires OCRM to consider the extent to which the proposed use could affect the value and enjoyment of adjacent owners. Further, OCRM representatives admitted that the "policies of the Act" included the value and enjoyment of adjacent property owners. Thus, the consideration of how the proposed use affects an adjacent property exists independently of the requirement that the proposed use not interfere with navigation.

III. Material Harm

Coffin Point argues that the evidence does not support the ALJ's conclusion that the location of its dock constitutes a material harm to the policies of the Act. Specifically, Coffin Point maintains that there is no evidence that its dock impedes the general public's use of Coffin Creek and that there is no substantial evidence that the dock impacts White's business. We believe there is substantial evidence of an adverse impact on White's commercial dock and the shrimpers who use it, and, therefore, we disagree with Coffin Point's assignment of error.
Section 48-39-150(A) requires OCRM to base its evaluation of a permit application on its individual merits. In presenting the unique circumstances of this case, White testified that the number of his customers decreased after Coffin Point's dock *258 was built and that there had been a steady decline in gross sales over the past five years. Although his profit and loss statements showed what was characterized by OCRM's counsel as a "spike" in ice sales in 2007, White explained that his former accountant had distorted the numbers (presumably by artificially lowering them) for the years prior to 2007 as part of an embezzlement scheme. He also added that he gained a new customer in 2007 only because that individual had been evicted from his previous facility and no longer had ready access to ice. Further, one of White's customers testified that he had cut back on the number of his visits to White's dock within the past two years.
Two of White's customers also gave testimony on the adverse impact of the location of Coffin Point's dock. They explained that the limited amount of space between White's dock and Coffin Point's dock, combined with the size of their shrimp boats, presented a danger of their boats colliding with the Coffin Point dock when they attempted to leave White's dock to exit the creek.[5] Further, a customer expressed concern over his lack of liability insurance to cover such a loss. Significantly, an OCRM official admitted that OCRM staff would consider any "significant impact" on a neighboring dock to constitute material harm to the policies of the Act.
Finally, Coffin Point argues that the ALJ erroneously attempted to link the alleged navigational hazard to White's business in an attempt to show that the Coffin Point dock is a material harm to the policies of the Act. However, as stated above, section 48-39-150(A)(10) requires OCRM to consider the effect of the proposed use on the value and enjoyment of adjacent owners. This consideration is independent of OCRM's policies on navigation.

CONCLUSION
Accordingly, the motion to dismiss is DENIED and the ALJ's order is AFFIRMED.
THOMAS, PIEPER, and GEATHERS, JJ., concur.
NOTES
[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] We note that on January 31, 2011, the ALC submitted to the General Assembly proposed amendments to the ALC Rules of Procedure that would allow for the ALC to serve certain documents, including orders, by e-mail. The proposed amendments concern the ability of the ALC to utilize service by e-mail in notifying parties of its decisions. However, the proposed amendments would not apply to the facts in this case, which involve service by a party rather than service by the ALC.
[3] See ALC Rule 5 (Service by delivery or mail); ALC Rule 29(C) (Contested Case Hearings-Decision); Rule 5, SCRCP (Service and Filing); Rule 203(b)(6), SCACR (time for service of notice of appeal).
[4] The 2011 proposed amendments to the ALC rules also contemplate service by the ALC and not by a party.
[5] White estimated that the distance between the Coffin Point dock and his commercial dock is approximately thirty-five feet and that the average shrimp boat that visits his dock is seventy feet long. One customer testified that he captains an eighty-foot boat.