768 S.E.2d 402

James R. MAULL, Appellant,

v.

SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL and David Abdo, Respondents, and Russell and Laura Schaible, Respondents.

Appellate Case No.2013–001878.

No. 5289.

Court of Appeals of South Carolina.

Heard Dec. 10, 2014.

Decided Jan. 28, 2015.

352

Michael A. Molony, of Young Clement Rivers, LLP, of Charleston, for Appellant.

Nathan Michael Haber, of Charleston, for Respondent.

South Carolina Department of Health and Environmental Control; David Abdo, of Charleston, pro se.

Leslie S. Riley, of McNair Law Firm, PA, of Charleston, for Respondents Russell and Laura Schaible.

LOCKEMY, J.

James Maull appeals the Administrative Law Court's (ALC's) order affirming the South Carolina Department of

Health and Environmental Control's (DHEC's) decision to issue an amendment to a critical area permit to David Abdo for the construction of a dock along the Atlantic Intracoastal Waterway (the intracoastal waterway) in Charleston County. Maull argues the ALC erred in (1) finding this matter is a private dispute that does not impact the public interest and (2) failing to consider the adverse impact of the amendment on his use and enjoyment of his property. We affirm in part and remand.

**FACTS**

Maull lives at 27 Broughton Road in Charleston County near the intracoastal waterway and Wappoo Creek. He has a private recreational dock where he docks his 48–foot sport fishing boat. In August 2007, Abdo purchased property at 29 Broughton Road from the Estate of Rebecca Palmer (Palmer). A condition of this purchase was for Palmer to obtain a dock permit. On August 2, 2007, DHEC issued a critical area permit to Palmer (the Permit), which was later transferred to Abdo. The Permit authorized the location of a dock 82.5 feet from Maull's existing dock.[1] Russell and Laura Schaible reside at 31 Broughton Road and their property is adjacent to Abdo's property. The Schaibles objected to the Permit because they believed the proposed dock would be too close to their property line. They sought to have the Permit reviewed by DHEC's board (the Board) but review was denied.

In May 2008, Maull obtained approval from DHEC to change the configuration of his floating docks. Maull removed his existing floating docks, which were in a "U" configuration, and installed a 10' × 44' floating dock. Installation of the 10' × 44' floating dock resulted in Maull's dock being 19.8 feet from the shared property line with Abdo's property (the shared property line). In September 2009, Maull submitted as-built drawings for his dock, which reflected his dock was actually built approximately 18 feet from the shared property line.

In May 2011, Abdo applied to amend the Permit. Specifically, Abdo requested to reconfigure his proposed dock so that it would be located 20.5 feet from the shared property line and

---

1. Abdo was not listed as an adjacent property owner on the Permit application and was not consulted about the proposed dock location.

approximately 39 feet from Maull's existing dock. On October 6, 2011, DHEC issued an amendment to the Permit (Amendment), with a condition requiring the proposed dock to be located 30.5 feet from the shared property line and approximately 49 feet from Maull's dock.

Thereafter, Maull, Abdo, and the Schaibles requested a final review conference before the Board. Maull requested the Amendment require Abdo's dock to be built 40.5 feet from the shared property line. Abdo and the Schaibles requested the dock be built 20.5 feet from the shared property line. During the conference, DHEC staff explained to the Board that its condition requiring the proposed dock to be located 30.5 feet from the shared property line was based on an erroneous belief that Maull's dock was located only 10 feet from the extended property line. The staff informed the Board that it later determined Maull's dock was actually 18.5 feet away from the shared property line.

The Board issued a final decision removing the special condition, finding it was based on DHEC staff's erroneous belief that Maull's dock was located 10 feet rather than 18.5 feet from the shared property line. The Board approved the Amendment as requested by Abdo and authorized approximately 39 feet between the Abdo proposed dock and Maull's dock.

Maull appealed the Board's decision to the ALC. Thereafter, the Schaibles filed a motion to intervene, which was granted.[2] At the hearing before the ALC, Abdo testified he requested the Amendment because the Permit placed his dock in a different location than the other docks in the area and would make it difficult to dock his boat at low tide. He explained he also requested the Amendment to preserve space for future potential modifications to his dock. Abdo confirmed that his proposed dock is 40 feet from the shared property line with the Schaibles.

Maull testified the distance between his dock and the proposed dock as approved by the Amendment will not allow him enough space to safely maneuver his 48–foot fishing boat onto

---

2. The Schaibles do not object to Abdo building a dock, but they object to any location that is closer to their shared property line and will negatively impact their view of the water.

the landward side of his dock. Maull testified he has previously docked his boat on the "channelward" side of his dock; however, he stopped because heavy boat traffic on the weekends would "beat the boat up against the dock . . . and put a lot of wear and tear on the pier." Maull stated he did not object to Abdo building a dock, he only objected to the location of the proposed dock as stated by the Amendment.

On cross-examination, Maull admitted he could dock his boat at a marina; however, he enjoys working on his boat and sitting on it while it is docked at his home. He further admitted that even without Abdo's proposed dock, there are safety concerns with docking his boat because of the heavy boat traffic in the area and the strong currents. Maull admitted he could dock his boat on the channelward side of his dock; however, his boat is safer on the landward side because of the weekend boat traffic in the area.

Maull presented Crayton Walters who was qualified, without objection, as an expert witness in navigation, tidal and water current issues, and vessel navigation. Walter testified he has frequently navigated the intracoastal waterway and Wappoo Creek. He explained the area of the intracoastal waterway where Maull's dock is located is one of the heaviest trafficked areas for recreational boating activity in Charleston. According to Walters, there are strong currents near Maull's dock and the proposed dock that present unique navigational hazards to commercial and recreational traffic due to the difficulty of maneuvering and docking in the area. Walters stated that if Maull were required to navigate his boat out of the 40–foot space between Maull's dock and Abdo's proposed dock as permitted by the Amendment, it would be unsafe for members of the public who were navigating in the channel. He opined that 100 feet or two boat lengths were needed to safely navigate Maull's boat to the landward side of Maull's floating dock. He admitted, however, it was possible for Maull to amend the configuration of his dock to be able to safely dock his boat even with the proposed location of Abdo's dock. Finally, Walters stated that boats as large as Maull's boat are somewhat rare on Maull's side of Wappoo Creek.

Jeff Thompson, a senior wetland project manager with DHEC, testified amendments to critical area permits are not

uncommon and that property owners who purchase property with an existing dock will often apply for amendments to make changes to the permitted dock. Thompson testified that in deciding whether to grant the Amendment, he considered navigational concerns related to the public's ability to navigate in Wappoo Creek. He explained Wappoo Creek is approximately 565 feet wide, and due to its width, Thompson disagreed with Walters' testimony that docking Maull's boat would create a safety hazard in the channel. He opined that docking Maull's boat would have little impact on public safety. Thompson further stated that he considered the "extent to which the [Amendment] could affect the value and enjoyment of adjacent owners," and he concluded "there was no significant impact to the value and enjoyment of adjacent owners." According to Thompson, the Amendment is consistent with applicable statutes and regulations. He confirmed 40 feet between two docks is a standard distance based on the requirement that each property owner's dock be twenty feet from the extended property line under DHEC regulations.

On cross-examination, Thompson admitted that when DHEC issued the Permit in 2007, it stated that "the proposed dock would likely affect Maull's ability to navigate a large boat to and from a U-shaped slip on his dock, and [DHEC] should address this through a conditional permit." Thompson further admitted he had never docked a boat at Maull's dock. He acknowledged that the proposed dock could be moved to 30.5 feet from the shared property line and still be in compliance with the applicable regulations.

The ALC affirmed DHEC's decision to issue the Amendment. Specifically, it disagreed with Maull's attempt to characterize this dispute as impacting the public interest, finding "if [Maull] cannot moor his 48-foot boat on the landward side of his dock, there will be no impact on the public interest." Additionally, the ALC found that even if there was a navigational impact, the impact was not unreasonable given the heavy boat traffic in the area. The ALC noted that "[a]ny maneuvering of [Maull's] vessel that ... [he] would have to undertake in order to navigate between the two docks, if he can at all, would take place in close proximity to his and Mr. Abdo's docks and would have little or no impact on the waterway traffic." Finally, the ALC determined DHEC "has

fully complied with the requirements of 23A S.C.Code Ann. Regs 30–2, 30–4, 30–11, and 30–12, and S.C.Code Ann. § 48–39–150." This appeal followed.

## STANDARD OF REVIEW

"Under the Administrative Procedures Act, the AL[C] presides as the fact-finder in contested cases." *White v. S.C. Dep't of Health & Envtl. Control,* 392 S.C. 247, 252, 708 S.E.2d 812, 814 (Ct.App.2011); *see also Jones v. S.C. Dep't of Health & Envtl. Control,* 384 S.C. 295, 303, 682 S.E.2d 282, 287 (Ct.App.2009) ("In a contested permitting case, the ALC presides as the fact finder."). "[T]his [c]ourt's [review] is limited to determining whether the findings were supported by substantial evidence or were controlled by an error of law." *White,* 392 S.C. at 252, 708 S.E.2d at 814 (first and third alterations in original) (internal quotation marks omitted). "In determining whether the AL[C]'s decision was supported by substantial evidence, this [c]ourt need only find, looking at the entire record on appeal, evidence from which reasonable minds could reach the same conclusion that the AL[C] reached." *Id.* (internal quotation marks omitted). "The mere possibility of drawing two inconsistent conclusions from the evidence does not prevent a finding from being supported by substantial evidence." *Id.* (internal quotation marks omitted).

## LAW/ANALYSIS

### Preservation

Initially, we address Respondents' preservation argument. Specifically, Respondents assert Maull's request that the Amendment be declared invalid is not preserved because at the ALC hearing, he only requested the Amendment be reversed and the Abdo dock placed at 30.5 feet or 40.5 feet from the shared property line. We disagree. Although Maull requests in his brief that we "reverse the [ALC]'s [order] . . . so that the Amendment is overturned and invalid," the substance of his argument is the ALC erred in affirming DHEC's decision to issue the Amendment. Specifically, he asserts the ALC erred in finding this matter is a private dispute that does not impact the public interest and in failing to consider the adverse impact of the amendment on his use and enjoyment of his property. These issues were raised to and ruled upon by the ALC. Therefore, the issues raised in this appeal are preserved.

## I. Public Harm

### A. Expert Testimony

Maull argues the ALC erred in finding this matter is a private dispute that does not impact the public interest. Initially, he asserts the ALC "wrongfully ignore[d] or misapprehend[ed] [Walters]'s testimony and opinions . . . and, in turn, erred in determining the nature of the navigational hazard arising from the Amendment and the Amendment's regulatory compliance." We disagree.

The ALC did not wrongfully misapprehend or ignore Walters's testimony. Here, the ALC acknowledged Walters's testimony that the proposed location of the dock would create navigational hazards. Specifically, Walters testified that if Maull attempted to get his boat in and out of a 40–foot space, it would be unsafe for members of the public. There was also evidence that the proposed location of the dock would not create a public harm. Maull admitted he could dock his boat on the channelward side of his dock and that he had done so in the past. Furthermore, Thompson explained that due to the width of Wappoo Creek, he disagreed with Walters' testimony that docking Maull's boat would create a safety hazard in the channel. Although Maull argues Thompson's testimony was unreliable because, unlike Walters, Thompson was not qualified as an expert in navigation, the ALC acting as the factfinder was not restricted to accept only expert testimony. *See Sauers v. Poulin Bros. Homes, Inc.*, 328 S.C. 601, 605, 493 S.E.2d 503, 505 (Ct.App.1997) ("[T]he jury is free to accept or reject in whole or in part the testimony of any witness, including an expert witness."). The decision to accept or reject Walters's testimony was ultimately a question of credibility for the ALC to decide. *See Menne v. Keowee Key Prop. Owners' Ass'n*, 368 S.C. 557, 567, 629 S.E.2d 690, 696 (Ct.App. 2006) (stating "[t]he credibility of testimony is a matter for the finder of fact to judge." (internal quotation marks omitted)). Accordingly, this argument is without merit.

### B. *White v. South Carolina Department of Health & Environmental Control*

Maull next argues the ALC's finding of private harm is inconsistent with *White v. South Carolina Department of*

*Health & Environmental Control,* 392 S.C. 247, 708 S.E.2d 812 (Ct.App.2011) (per curiam). Specifically, he asserts the present case is analogous to *White* because "we have undisputed testimony that the limited space between the Abdo and Maull docks would necessarily require additional, unnecessary, and potentially dangerous maneuvering in the busy Wappoo Creek area posing an impediment to the free flow of commercial and recreational traffic in the area." We disagree.

In *White,* Coffin Point (the HOA) requested a permit to build a community dock, which would be located twenty feet from the extended property line between the HOA's property and the property of White, who maintained a commercial dock for shrimpers to buy fuel and ice. 392 S.C. at 251, 708 S.E.2d at 814. After the permit was issued, the HOA built the dock so that it crossed White's extended property line, and White filed an action to enforce the permit as written. *Id.* The Bureau of Ocean and Coastal Resource Management (OCRM) determined the dock was built in compliance and issued an "after-the-fact permit amendment." *Id.* White then challenged the amendment, alleging the community dock would cause a disruption to his commercial operations from his dock–selling fuel and ice to commercial shrimpers. *Id.* The ALC ruled in favor of White and ordered the HOA to rebuild its dock in accordance with the original permit. *Id.* On appeal, the HOA argued that policing disputes between neighboring dock owners is a private matter not contemplated by the policies of the Act. *Id.* at 255, 708 S.E.2d at 816. Our court disagreed, finding the case "d[id] not involve a mere private navigational dispute." *Id.* at 256, 708 S.E.2d at 817. We found the case involved the disruption of a commercial enterprise and its customers, and also concerned the needs of White's customers, members of the public, and the local shrimping industry in general. *Id.* at 256, 708 S.E.2d at 816–17.

Additionally, this court noted the number of White's customers decreased after the dock was built, there had been a steady decline in White's gross sales, and two customers testified that the limited space between White's dock and the HOA's dock, combined with the size of their shrimp boats, presented a danger of their boats colliding with the HOA's dock when they attempted to leave White's dock to exit the

creek. *Id.* at 257–58, 708 S.E.2d at 817. Moreover, White estimated that the distance between the HOA dock and his commercial dock was approximately thirty-five feet, and the average shrimp boat that visited his dock was seventy feet. *Id.* at 258 n. 5, 708 S.E.2d at 817 n. 5. Therefore, we found substantial evidence supported the ALC's conclusion that the location of the dock constituted a material harm to the policies of the Act. *Id.* at 257, 708 S.E.2d at 817.

■ *White* is distinguishable from the case at bar. In *White,* the allegation was that the community dock would disrupt White's commercial operations from his dock-selling fuel and ice to commercial shrimpers. 392 S.C. at 251, 708 S.E.2d at 814. Here, however, Maull's dock and the proposed dock are private docks that are not used for commercial enterprises. Although Maull contends the proposed dock will impose an "impediment to the free flow of commercial and recreational traffic in the area," we fail to see how Maull's inability to dock his boat in the manner he prefers will disrupt the other boat traffic in the area. Additionally, the safety concerns in *White* are not present here. In *White,* the distance between the HOA dock and the commercial dock was approximately 35 feet, and the average shrimp boat that visited White's dock was 70 feet. *Id.* at 258 n. 5, 708 S.E.2d at 818 n. 5. Here, however, the distance between the Abdo dock and Maull's dock is 39 feet, and the length of Maull's boat is 48 feet. Moreover, as Thompson explained, Wappoo Creek is approximately 565 feet wide, which indicates that the docking of Maull's boat would have little impact on the other boat traffic in the area. It is also important to note that in *White,* the question before this court was whether substantial evidence supported the ALC's finding that there were serious safety concerns raised by the proposed dock. 392 S.C. at 257–58, 708 S.E.2d at 817. Here, however, the ALC concluded Maull failed to show this dispute negatively impacted the public, and, based on the foregoing, substantial evidence supports that finding.

The present case is similar to *Dorman v. South Carolina Department of Health and Environmental Control,* a case relied on by the ALC in finding this was a private dispute. 350 S.C. 159, 565 S.E.2d 119 (Ct.App.2002). In *Dorman,* two neighboring landowners objected to a proposed boat dock, arguing the dock would crowd their existing docks and the

roof would obstruct their view. *Id.* at 162–63, 565 S.E.2d at 121. This court adopted OCRM's interpretation of South Carolina Regulation 30–12, which included the position that any navigational issue between docks is a private property issue. *Id.* at 171, 565 S.E.2d at 126. Specifically, the Appellate Panel of OCRM stated, "It is not the policy of OCRM to police navigational disputes that should be dealt with among the adjacent property owners." *Id.* at 163, 565 S.E.2d at 121 (internal quotation mark omitted). This court remanded the case to the ALC to determine whether the permit should be granted in light of OCRM's interpretation of Regulation 30–12. *Id.* at 171–72, 565 S.E.2d at 126.

Although Maull points to the heavy boat traffic and strong currents in the area, his main argument is that the proposed dock will make it more difficult to dock his boat in the manner he prefers. Many of these obstacles will exist regardless of the dock's location, and the ALC considered these factors in finding the matter was a private dispute. The ALC also considered that there are numerous other similar docks in the area that have to deal with these hardships. Therefore, the ALC did not err in finding this was a private dispute.

### C. *Brownlee v. South Carolina Department of Health & Environmental Control*

Maull next relies on *Brownlee v. South Carolina Department of Health & Environmental Control,* 382 S.C. 129, 676 S.E.2d 116 (2009) to argue that DHEC's decision to grant the Amendment has spawned this litigation to protect the use and enjoyment of his dock.

In *Brownlee,* the issue was whether a tributary should be deemed nonnavigable due to the fact that a manmade structure was creating an impediment to navigation. 382 S.C. at 131, 136–37, 676 S.E.2d at 117, 119–20. The structure, a dock constructed by Mr. Atkinson, was located in the mouth of the tributary and was not in compliance with a DHEC permit. *Id.* at 131, 133 n. 4, 676 S.E.2d at 117, 118 n. 4. The appellants sought to have this tributary designated as nonnavigable because they wanted to extend their docks across the tributary to the Bohicket Creek. *Id.* at 131, 676 S.E.2d at 117. The supreme court admonished DHEC, stating "the unnecessary litigation that has been spawned with this case and several others by the location of the Atkinson dock constitutes

a waste of valuable judicial resources. Public funds would have been better spent in enforcing compliance rather than engaging in protracted litigation to resolve what is essentially a dispute among neighbors." *Id.* at 143, 676 S.E.2d at 123. Nevertheless, the court concluded the Atkinson dock did not render the tributary nonnavigable, noting "the test for navigability does not hinge on the existence of man-made impediments or other obstructions." *Id.* at 141, 676 S.E.2d at 122.

Maull argues the present case is similar to *Brownlee* because DHEC "failed to adhere to, much less even consider, the same issues that were resolved in the 2007 permit." We disagree. In *Brownlee,* the supreme court admonished DHEC because DHEC had been aware the Atkinson dock was not in compliance for eighteen years yet failed to take action to enforce its finding of noncompliance. 382 S.C. at 142–43, 676 S.E.2d at 123. Although DHEC first issued the Permit in this case in 2007, placing the proposed dock 82.5 feet from Maull's existing dock, the Permit was issued without input from Abdo. Furthermore, Thompson testified amendments to permits in critical areas are not uncommon. Moreover, the Amendment was issued in compliance with applicable regulations because it placed the dock 20.5 feet from the shared property line, and the proposed dock conforms to other docks in the area unlike the structure at issue in *Brownlee.* Therefore, *Brownlee* is distinguishable from the present case.

### D. Miscellaneous Factual Findings

#### 1. Mooring the Boat

Next, Maull asserts "clear error" from the ALC's finding that "the question of navigation of the Maull boat can be resolved by mooring it on the outboard portion of the dock." We disagree. Maull specifically testified he had docked his boat on the channelward side of his dock; however, he preferred to dock it on the landward side of his dock because weekend boat traffic through the channel could cause damage to his boat and dock. Therefore, the ALC did not err in making this finding.

#### 2. Vessels of Similar Size

Maull argues no evidence supports the ALC's finding that there are no vessels of similar sizes on the southern

portion of Wappoo Creek where Maull's dock is located. We disagree. On cross-examination, Walters twice testified that boats the size of Maull's are somewhat rare on Maull's side of Wappoo Creek. Therefore, substantial evidence supports this finding.

### 3. Regulation 30–12(A)(1)(a)

██ Maull next argues the navigational restriction that Regulation 30–12(A)(1)(a) (2011) seeks to prevent—restrictions and hazards to public navigation in the AIWW—has been demonstrated. We disagree.

Pursuant to Regulation 30–12(A)(1)(a), "Docks and piers shall be limited to one structure per parcel or lot and in all instances . . . shall not restrict the reasonable navigation or public use of State lands and waters. . . ."

As previously stated, Maull's inability to dock his boat in the manner he prefers will not disrupt other boat traffic in the area. Although Walters and Maull testified the location of the proposed dock would impact the commercial and recreational traffic in the area, there was substantial evidence that indicated there would be little impact on navigation in this area. Therefore, this argument is without merit.

### II. Use and Enjoyment of Property

Maull next argues the ALC erred in failing to consider the adverse impact of the Amendment on his use and enjoyment of his property. He points out that in 2007, DHEC determined the original Palmer permit application would negatively impact Maull's use of his dock; however, when DHEC issued the Amendment it failed to consider the adverse impact to Maull's use and enjoyment of his dock. According to Maull, the ALC erred because subsection 48–39–150(A)(10) of the South Carolina Code (2008) requires DHEC to consider the effect of the proposed use on the value and enjoyment of adjacent owners, independent of its policies on navigation. We remand this issue to the ALC.

██ Pursuant to subsection 48–39–150(A)(10), "In determining whether a permit application is approved or denied the department shall base its determination on the individual merits of each application, the policies specified in Sections

48–39–20 and 48–39–30 and be guided by the following general considerations . . . [t]he extent to which the proposed use could affect the value and enjoyment of adjacent owners." "[Subs]ection 48–39–150(A)(10) requires OCRM to consider the effect of the proposed use on the value and enjoyment of adjacent owners. This consideration is independent of OCRM's policies on navigation." *White*, 392 S.C. at 258, 708 S.E.2d at 818. "After considering the views of interested agencies, local governments and persons, and after evaluation of biological and economic considerations, if the department finds that the application is not contrary to the policies specified in this chapter, it shall issue to the applicant a permit." S.C.Code Ann. § 48–39–150(B) (2008).

■ Initially, we find this issue should be remanded because the ALC did not specifically address this issue in its order. *See Hill v. S.C. Dep't of Health & Envtl. Control*, 389 S.C. 1, 19–20, 698 S.E.2d 612, 622 (2010) (noting our limited scope of review from a decision of the ALC does not allow us to make our own factual findings and remand may be appropriate when the ALC's order is insufficient for appellate review). In its order, the ALC cited subsection 48–39–150(A)(10) for the proposition that DHEC must consider "the extent to which the proposed use could affect the value and enjoyment of adjacent owners." The ALC, however, never specifically addressed the impact the Amendment would have on Maull's use and enjoyment of his property. Our review of the order indicates the ALC affirmed DHEC's decision based on its finding that this was a private dispute that did not impact navigation in the area. The only portions of the order where the ALC arguably addresses the impact on Maull's use and enjoyment of his property is in its conclusion of law number 17, which states "I further conclude the Amendment falls within and complies with the applicable regulations and statute" and in its conclusion, which states, "I find and conclude that DHEC has fully complied with the requirements of 23A S.C.Code Ann. Regs. 30–2, 30–4, 30–11, and 30–12 and S.C.Code Ann. § 48–39–150." These general rulings are insufficient to permit a meaningful review of this issue because our court has specifically stated that DHEC must consider the effect of the proposed use on the value and enjoyment of adjacent owners independent of its policies on navigation. *See White*, 392 S.C. at 258, 708 S.E.2d at 818. Therefore, we

remand this issue to the ALC. On remand, the ALC is instructed to make a finding as to whether DHEC considered the effect of the Amendment on the value and enjoyment of adjacent property owners as required by subsection 48–39–150(A)(10), and to determine whether that finding was justified.

## CONCLUSION

For the foregoing reasons, we affirm the ALC's finding that this matter is a private dispute that does not impact the public interest. Additionally, we remand to the ALC to make a finding as to whether DHEC considered the effect of the Amendment on the value and enjoyment of adjacent property owners as required by subsection 48–39–150(A)(10), and to determine whether that finding was justified.

**AFFIRMED IN PART AND REMANDED.**

FEW, C.J., and THOMAS, JJ., concur.